**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 3:13-cr-71-1 (VLB)** |
| | : | |
| **PEDRO RIVERA** | : | |
| **Defendant.** | : | **June 15, 2020** |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## ORDER AND MEMORANDUM OF DECISION GRANTING DEFENDANT PEDRO RIVERA'S  MOTION FOR COMPASSIONATE RELEASE, DKT. 1378

Before the Court is Defendant Pedro Rivera's Motion for a Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling" reasons. [Dkt. 1378]. The Court initially denied without prejudice Defendant's Motion for Compassionate Release because his stated release plan proposed that he relocate to Puerto Rico during the period of his supervised release but did not explain how he would be effectively supervised in that district. [Dkt. 1388]. Thereafter, Defendant filed supplemental briefing showing that the U.S. Probation Office for the District of Puerto Rico conducted a site visit to his brother's home and agreed to supervise him. [Dkt. 1389]. The Government opposes Defendant's motion. [Dkt. 1387 (Gov. Mem. in Opp'n)]. After careful consideration, the Court GRANTS Defendant's motion.

## Background

On December 9, 2015, the Court sentenced Mr. Rivera to 116 months of incarceration following Defendant's guilty plea to one count of Conspiracy to Distribute, and to Possess with Intent to Distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). Mr. Rivera was the lead defendant in a 21-defendant conspiracy involving the trafficking of wholesale quantities of cocaine from Puerto Rico to New London, Connecticut via the U.S. Postal Service and other means. [Dkt. 1196 (Pre-Sentence Investigation Report) ¶¶ 3, 38](hereinafter the PSR).[1]

Mr. Rivera stipulated to a drug quantity of at least 5 but less than 15 kilograms of cocaine. [PSR ¶ 38]. The drug conspiracy was particularly pernicious and exploitative, given the impact on the small community of New London and Defendant's ostentatious lifestyle funded by drug proceeds. [Dkt. 1230 (12/09/2015, Sentencing hearing audio file) at 40:30-43:00, 44:33-45:48, 52:00-57:42]. Mr. Rivera was a manager or supervisor of the conspiracy, which included his mother and father, and members of his girlfriend's family, among others. These other individuals assisted Mr. Rivera with packaging and shipping cocaine, picking up packages and wiring money for purposes of obtaining cocaine. [PSR ¶ 47]. At the

---

[1] At sentencing, the Court confirmed that Defendant was interviewed by probation with his counsel present and read the PSR. Defendant did not have any objections to the facts as presented in the PSR and the Court adopted the PSR as its finding of fact. [Dkt. 1230 (12/09/2015, Sentencing hearing audio file) at 1:50-2:38]; [Dkt. 1241 (Sealed Statement of Reasons)].

time of his arrest, Defendant also possessed a shotgun and ammunition. [PSR ¶ 47].

Defendant's total offense level was 32 and he had no prior arrests (Criminal History Category I) rendering an advisory guideline range of 121 to 151 months of incarceration. [Dkt. 1230 (12/09/2015, Sentencing hearing audio file) at 58:56-59:10]. Taking all of the 18 U.S.C. § 3553(a) sentencing factors into account, the Court sentenced Mr. Rivera to, *inter alia*, a 116-month term of incarceration. Defendant appealed the imposition of his sentence, which was affirmed by the U.S. Court of Appeals for the Second Circuit on July 13, 2017. [Dkt. 1335 (2nd Cir. Mandate dismissing 15-2045)].

A review of the Bureau of Prison's ("BOP") Inmate Locator confirms that Mr. Rivera was designated to FMC Devens. *See Inmate Locator Service, BOP Registration no. 21576-014*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/. *See Vera v. United States*, No. 3:11-CV-00864-VAB, 2017 WL 3081666, at *3, n. 2 (D. Conn. July 19, 2017) (taking judicial notice of the inmate locator search). His current release date is June 29, 2021.

## Legal Standard

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed'; but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citations omitted) (quoting 18 U.S.C. § 3582(c)). The statute providing for the finality of a

criminal judgment contains a narrow exception to provide for re-sentencing for compassionate release. 18 U.S.C. § 3582(c)(1)(A).

Addressing the specific provision under which Defendant seeks release, the First Step Act of 2018 amended the procedural requirements for bringing a motion to reduce sentence to provide compassionate release. First Step Act of 2018, Section 603(b), Pub. L. 115-391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)). This amendment allows a defendant to move for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Previously, only the Bureau of Prisons ("BOP") could move for compassionate release and such motions were rarely filed. *See United States v. Rivernider*, No. 3:10-CR-222(RNC), 2020 WL 597393, at *2 (D. Conn. Feb. 7, 2020). The amendment expanded access to the courts but did not alter the substantive standard. *See Ibid.*; *see also United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

To consider a sentence reduction for compassionate release, Defendant must show that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). By statute, such reduction must be consistent with applicable policy statements issued by the U.S. Sentencing Commission. § 3582(c)(1)(A). In addition to finding "extraordinary and compelling" reasons for the reduction, the Court must also find that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"

4

per U.S.S.G. 1B1.13(2). Then, before compassionate release can be granted, the Court must consider the 18 U.S.C. § 3553(a) sentencing factors to the extent relevant. 18 U.S.C. § 3582(c)(1)(A).

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t). As this Court and other courts have recognized, the U.S. Sentencing Commission guidance has not yet been updated to reflect the liberalization of the procedural requirements. *United States v. Gagne*, No. 3:18-CR-242 (VLB), 2020 WL 1640152, at *2 (D. Conn. Apr. 2, 2020); *Ebbers*, 2020 WL 91399, at *4. The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

 (A) Medical Condition of the Defendant.--
    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia. [or]
    (ii) The defendant is--
        (I) suffering from a serious physical or medical condition,
        (II) suffering from a serious functional or cognitive impairment, or
        (III) experiencing deteriorating physical or mental health because of the aging process,
    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13, Commentary Application Note 1(A). Commentary Application Note 1(D) contains a residual clause to provide relief for other "extraordinary and compelling reasons" as determined by the Director of the Bureau of Prisons. Each of the conditions listed in the application note are debilitating and render an inmate

unlikely to recidivate. The Defendant bears the burden of showing that he is entitled to a sentence reduction. *Ebbers*, 2020 WL 91399, at *4.

**Discussion**

**I.**    **Exhaustion of administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A)**

18 U.S.C. § 3582(c)(1)(A) requires that a defendant must first seek administrative relief, and then may proceed to court after fully exhausting administrative appeals or the lapse of thirty days from the warden's receipt of the request, whichever is earlier. Here, the Court agrees with the parties that Defendant has satisfied the administrative exhaustion requirement. Mr. Rivera avers that he requested that the BOP file a motion for compassionate release on his behalf on April 21, 2020. [Dkt. 1378 (Def. Suppl. Mot.) at 2]. Mr. Rivera included a copy of his inmate request, dated April 21, 2020, with his *pro se* filing. [Dkt. 1378-1 (Def. *pro se* mot.) Ex. A]. The warden's denial dated May 14, 2020, states that the form was received by the warden on May 1, 2020. [Dkt. 1378-1 (Ex. A)]. Applying the prison mailbox rule, the thirty-day period commences when the request was signed and submitted to prison officials. *See United States v. Resnick*, No. 14 CR 810 (CM), 2020 WL 1651508, at *6 (S.D.N.Y. Apr. 2, 2020)(applying the mailbox rule to the § 3582 exhaustion requirement); *see also Houston v. Lack*, 487 U.S. 266, 276 (1988)(explaining the prison mail box rule).

Consequently, since over thirty days passed between Mr. Rivera's administrative request on April 21, 2020 and his counsel's filing of the supplemental motion for compassionate release on May 25, 2020, he has

6

exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A) and his motion is properly before the Court.[2]

## II.   Whether Defendant has demonstrated "extraordinary and compelling reasons"

The Court recognizes that "extraordinary and compelling" circumstances may exist outside of those circumstances delineated by the U.S. Sentencing Commission, given the advisory nature of the guidelines, *United States v. Booker*, 543 U.S. 220 (2005), and their conflict with the statutory language of the First Step Act amendments. *See United States v. Anton Jepsen*, 3:19-cr-73, Dkt. 41 at 7-8, 2020 WL 1640232 (D.Conn. Apr. 1, 2020)(Bryant, J.); *United States v. Beck*, 425 F.Supp.3d 573, 579–80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F.Supp.3d 345, 348–353 (S.D. Tex. 2019). The guidelines are nevertheless helpful in defining the vague standard because the First Step Act did not amend the substantive standard. *Ebbers*, 2020 WL 91399, at *4.

This Court and others have recognized that an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on their medical history may constitute "extraordinary and compelling" reasons to grant compassionate release, often in combination with other factors. *See, e.g. Jepsen*, 2020 WL 1640232, at *5 (granting motion for compassionate release where defendant suffers from a compromised immune

---

[2] Implicit in this ruling is that exhaustion under 18 U.S.C. § 3582(c)(1)(A) requires that an inmate exhaust administrative remedies prior to filing a motion for compassionate release, and thus administrative remedies cannot be exhausted during the pendency of the motion.

system); *United States v. Sanchez*, No. 18-CR-00140-VLB-11, 2020 WL 1933815, at *5 (D. Conn. Apr. 22, 2020) (same); *see also, Martinez-Brooks v. Easter*, No. 3:20-CV-00569 (MPS), 2020 WL 2405350, at *13 (D. Conn. May 12, 2020) ("...approximately 25 out of 48 COVID-19 related motions for compassionate release have been granted in this District alone since the crisis began."); *but see United States v. Spruill*, No. 3:18-CR-0022-10(VLB), 2020 WL 2113621, at *5 (D. Conn. May 4, 2020)(denying compassionate release where "[defendant] is young and healthy; his is the antithesis of the profile of a person at heightened risk of complications or death due to contracting COVID-19.").

Here, Mr. Rivera satisfies his burden of establishing "extraordinary and compelling" reasons to modify his sentence because he is especially vulnerable to severe complications if he contracts COVID-19, he is nearing the end of his sentence, and he has demonstrated rehabilitative potential.

First, the parties agree that Mr. Rivera suffers from type 2 diabetes mellitus. [Dkt. 1384 (Def. Suppl. Mot.) at 2-3]; [Dkt. 1387 (Gov. Opp'n) at 3]. Defendant's medical records confirm that he is diabetic and that his diabetes is *relatively* well controlled by two medications. [Dkt. 1386 (Sealed Med. R.) at 11](03/11/2020 health services note showing Hemoglobin A1C in the diabetic range); *see also* [Dkt. 1385 (Sealed Med. R.) at 1)](12/20/2019 health services note stating "DMII--good control--slightly higher HbAIC this time--suggest cardio and watching diet."). His medical records also show that he was diagnosed with morbid obesity. [Dkt. 1385 (Sealed Med. R.) at 17]. Defendant also argues that he has two other medical conditions,

8

high cholesterol and Gilbert's syndrome, which also place him at greater risk from COVID-19. [Dkt. 1384 (Def. Suppl. Mot.) at 3-4].

The Government argues that while the CDC identified diabetics as a population more vulnerable to severe complications from COVID-19, its webpage added the qualifier, "particularly if not well controlled," and thus, since Defendant's diabetes is well controlled, he is not at a substantially higher risk of severe complications or death if he contracts COVID-19. [Dkt. 1387 (Gov. Opp'n) at 3-4](citing *People who are at higher risk for severe illness*, Ctrs. for Disease Control and Prevention [https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html)](https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html) (last reviewed by the CDC on May 14, 2020). Here, the Court disagrees with the Government's interpretation of this source.

In interpreting the CDC's guidance, the Court is mindful of the purpose of the parties' cited source. The CDC's webpage is intended to quickly convey important health information to the general public grabbling with the pandemic; its language lacks the contours and nuance of legislation or a carefully drafted contract. Through this lens, the CDC webpage is understood to mean that diabetics and people suffering from listed conditions are more vulnerable to COVID-19 than the general public and that a smaller subgroup of diabetics, those whose conditions are poorly controlled, are even more vulnerable.

In *United States v. Colvin*, No. 3:19CR179 (JBA), 2020 WL 1613943, at *3 (D. Conn. Apr. 2, 2020), Judge Arterton rejected the Government's argument that a

9

defendant was not "particularly vulnerable to COVID-19" because her diabetes "appears to be under control." Other courts have also found that defendants with diabetes are vulnerable to severe complications from COVID-19 without drawing the distinction regarding whether or not their diabetes was controlled by medication. *See, e.g. United States v. Miranda*, No. 3:16-CR-128-(VAB)-1, 2020 WL 2124604, at *3 (D. Conn. May 5, 2020) ("Courts have also found diabetes to be a sufficiently serious underlying condition warranting compassionate release.")(citing examples). Here, considering the CDC guidance and the fact that the BOP deemed Mr. Rivera's diabetes severe enough to designate him to a federal medical center, the Court finds that he is more vulnerable to severe complications or death if he contracts COVID-19.

The Government argues that Mr. Rivera's diabetes is not an "extraordinary and compelling" reason for release as he is neither terminally ill or unable to provide self-care in a custodial setting, as contemplated by U.S.S.G. 1B1.13, Commentary Application Note 1(A). [Dkt. 1387 (Gov. Mem. in Opp'n) at 4]. The Government argues that, "[i]n sum, it is apparent that, but for the COVID-19 pandemic, Defendant would present no basis for compassionate release." [*Id*. at 5]. But this argument is no bar to relief. In the vast majority of cases considered by this Court and other district courts of late, few defendants would qualify for re-sentencing in the absence of the potentially lethal risk posed by COVID-19.

Rather, courts have considered a multitude of factors in factually intensive inquiries, including defendants' age, the severity and documented history of their health conditions, defendants' history of managing those conditions in prison, the

proliferation and status of infection at defendants' facilities, and the proportion of the term of incarceration that has been served. *United States v. Brady*, No. S2 18 CR. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020)(citations omitted).

Considering these additional factors, the Court also addresses the proliferation of COVID-19 at Defendant's facility. At the time the Government filed its second opposition brief, there were 26 inmate infections and three staff infections at FMC Devens. [Dkt. 1387 (Gov. Mem. in Opp'n) at 7]. Now, approximately two weeks later, FMC Devens reports 41 current inmate infections, five staff infections, two inmate deaths, and twelve recovered inmates. *See BOP COVID-19 Cases (Table)*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp, (last updated 06/12/2020). FMC Devens is now fourth among BOP facilities for the highest number of active COVID-19 infections. *Id.* Unfortunately, federal medical centers like FMC Devens, which house the BOP's sickest inmates, have not been spared by the pandemic. *See, e.g. Id.* (FMC Fort Worth reported over six hundred inmates had been infected, resulting in 11 inmate deaths.)

The Government argues that the virus is also present in Puerto Rico, where Mr. Rivera intends to reside upon release. [Dkt. 1387 (Gov. Mem in Opp'n) at 5](citing New York Times statistics that Puerto Rico reported over 3,300 infections and 129 deaths). However, it is the relative rate of infection and mortality that is more telling. The New York Times source that the Government cites now reports 5,536 cases and 146 deaths in Puerto Rico, with Morovis, P.R. reporting a per capita rate of 1 in 557. *See Puerto Rico Coronavirus Case Count (interactive map)*, N.Y.

Times, https://www.nytimes.com/interactive/2020/us/puerto-rico-coronavirus-cases.html (last reviewed June 12, 2020). By comparison, 6,205 BOP inmates have cumulatively tested positive, resulting in a per capita infection rate of approximately 4 in 100. *See BOP COVID-19 Cases (Table)*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp, (last updated 06/12/2020).

The Court also finds that the limited duration remaining on Defendant's sentence as an additional consideration favorable to granting his motion for compassionate release. Most of Defendant's sentence has already been served and he has approximately ten percent of his sentence remaining (i.e. 104 months of 116-month sentence was served). Additionally, the Court considers the character of the Defendant's time in custody. At sentencing, the Court noted that Mr. Rivera had good pretrial adjustment while in custody at the Wyatt Detention Center, first working in the kitchen, and then promoted to a crew captain position. [Dkt. 1230 (12/09/2015, Sentencing hearing audio file) at 1:03:28-1:04:00]. Mr. Rivera's BOP disciplinary history evidences only two minor infractions during his eight years of incarceration, both technical and related to his participation in rehabilitation programs. [Dkt. 1384-2 (Def. Suppl. Mot.) Ex. B](infraction for being late for class and a second infraction for using staff weights as an orderly at the fitness center).

This case is also distinguishable from *United States v. Gamble*, No. 3:18-CR-0022-4(VLB), 2020 WL 1955338 (D. Conn. Apr. 23, 2020) in a few important respects. Both Mr. Gamble and Mr. Rivera suffer from medication-controlled diabetes, were convicted of serious narcotics offenses, and are older than most inmates. Both men possessed firearms, but Mr. Gamble openly expressed a willingness to use a

firearm, even after his instant federal drug conviction and prior state firearms conviction. *Id.* at 1. Unlike Mr. Gamble, Mr. Rivera has served most of his lengthy sentence. *Id.* at 6. They are also on opposite ends of the criminal history spectrum; this was Mr. Rivera's first criminal conviction, whereas Mr. Gamble had fourteen prior convictions and was undeterred by a prior 10-year sentence. *Id.* at 6.

Accordingly, the Court finds that the combination of Mr. Rivera's medical vulnerability to COVID-19, the rapid spread of the disease at his facility, and the fact that he has served most of his sentence with favorable adjustment, as constituting "extraordinary and compelling" reasons for a reduction in sentence.

### III.   Whether Defendant poses a danger to the community

Before granting a motion for compassionate release, the sentencing court must consider *inter alia*, the history and characteristics of the person, including:

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;

18 U.S.C. § 3142(g)(3)(A).

This inquiry considers the Defendant's circumstances during the interim period between the proposed amended sentence and his existing release date. *United States v. Hill*, No. 3:19-CR-00038 (JAM), 2020 WL 2542725, at *3 (D. Conn. May 19, 2020). The Government objected because of ambiguities and inconsistencies with Defendant's proposed release plan and argued that he posed a risk of reengaging in drug trafficking. [Dkt. 1387 (Gov. Opp'n) at 6]. After the Court denied Mr. Rivera's motion because he did not explain how he would be effectively

supervised if he relocated to the District of Puerto Rico, defense counsel filed a supplemental memorandum indicating that the District of Puerto Rico agreed to supervise Mr. Rivera and conducted a site visit at his brother's home. The supplemental memorandum was accompanied by a letter from Officer Lopez of the District of Puerto Rico to the Bureau of Prisons, copied to the Probation Office for this District, confirming the same. [Dkt. 1389-1]. The letter relieves the Court's concern about the adequacy of Mr. Rivera's release plan because the District of Puerto Rico has already undertaken steps to consider the suitability of his proposed placement and has agreed to supervise him.

Given the involvement of Mr. Rivera's immediate and extended family in the narcotics trafficking conspiracy, there is greater likelihood that Mr. Rivera would have the opportunity to reengage in drug dealing. However, Mr. Rivera's brother was not involved in drug trafficking and the PSR states that he works as a painter. [PSR ¶ 62]. Defendant has no prior criminal convictions or any prior history of violence or significant drug use. There is no appreciably greater risk that he returns to drug trafficking now, as opposed to a year from now when he is scheduled to be released.

Accordingly, the Court finds that Defendant's release from custody would not endanger any person or the community at large.

## IV.   Consideration of the 18 U.S.C. § 3553(a) sentencing factors

Finally, the Court concludes that reducing Mr. Rivera's sentence comports with the statutory factors considered at sentencing. As discussed above, Mr. Rivera was

14

convicted of a serious drug trafficking offense. He has served most of his custodial sentence, well above the sixty-month mandatory minimum, with roughly 10% of his sentence remaining. In light of that, considering his vulnerable health status, and his favorable adjustment to incarceration, a sentence of time served would still promote respect for the law and reflect the seriousness of his offense. The Court also finds that recidivism is less likely because Defendant's risk of infection during the pandemic requires him to limit the scope of his interactions with others. Defendant is older now and his lengthy custodial sentence is likely to dissuade him from reengaging in criminal activity.

## Conclusion

For the aforementioned reasons, the Court GRANTS Defendant's motion for compassionate release. An amended judgment sentencing Mr. Rivera to a sentence of time served will follow. The conditions of supervised release as set forth in the initial criminal judgment [Dkt. 1235 (Crim. J)] remain unchanged and shall commence immediately upon his discharge from BOP custody.

Mr. Rivera should note that the leniency shown by the Court at sentencing and again in consideration of his motion for compassionate release is unlikely to be shown a third time if he betrays the Court's trust by violating any term of supervised release, irrespective of its severity or where the violation occurs or any asserted health risks attendant to incarceration.

**IT IS SO ORDERED**

_____/s/_____

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: June 15, 2020**